Mr. Chief Justice Shakkey
delivered the opinion of the court.
The plaintiff had recovered judgment against the defendant in May, 1842, and on the 20th of April, 1843, an execution was *707 levied on sundry slaves as the property of Cheatham. He denied the ownership of the slaves, but claimed to hold them as executor of Sarah W. Cheatham, and filed an affidavit to that effect. An issue was made up to try the right at May term, 1843, of the circuit court, and when it was about to come on for trial at the November term, 1843, Cheatham moved to quash the execution, because on the 21st of November, 1842, he had filed his petition praying the benefit of the bankrupt act; which was granted on the 23d of February, 1843, and he was finally discharged on the 29th of May following. His motion was sustained and the execution quashed, which is now relied on as an error for which the judgment should be reversed. The judgment was rendered prior to the petition to be declared a bankrupt, and prior to any act of bankruptcy as far as we know, and it constituted a lien on all the property Cheatham then had, and on all that he might afterwards acquire. His bankruptcy may prevent the judgment lien from attaching on property acquired after his discharge; that is not now a question. The question is, how far the prior lien will be affected by his subsequent bankruptcy, and in what mode, or before what tribunal, that lien may be enforced. This is a question of importance, and it is one which is almost daily brought to our notice in some shape or other, and the sooner it is settled the better for future litigants.
The second section of the bankrupt act contains an express provision that nothing therein shall be construed to annul, destroy, or impair any lawful rights of married women or minors, or any liens, mortgages, or other securities on property real or personal, which may be valid by the laws of the states respectively, and which may not be inconsistent with the provisions of the second and fifth sections of the act. We of course have no power to construe the act of congress so as to produce collision between the federal and state tribunals, but we must adopt the construction which is given to it by the courts of the United States. The question now before us has received the consideration of the supreme court in several instances, and the decisions seem to settle beyond dispute, not only the validity of *708 liens which have accrued under state laws, but the manner by which they are to be protected. In the case of Savage’s Assignee v. Best, 3 How. S. C. Rep. 111, the contest was between the assignee of the bankrupt and a purchaser at sheriff’s sale, under an execution which was delivered to the sheriff before, but not levied until after the act of bankruptcy. The plaintiff, by the laws of Kentucky, acquires a lien by the delivery of a ji. fa. to the sheriff. The lien thus acquired was declared to be valid by the supreme court, and superior to the title of the as-signee ; and not only so, but the consummation of that lien under' process from thef state court, after the act of bankruptcy, was recognized as regular; it must-have been so considered, as the purchaser at sheriff’s sale was protected in his title.
The question was again before the supreme court, and very fully considered in Christy, Ex parte, Ibid. 292, and afterwards in Norton’s Assignee v. Boyd, Ibid. 426. A summary of the points settled in these cases will show the reasons on which the jurisdiction of the federal courts rests, and the extent to which it will be exercised.
Liens under state laws are not to be annulled or defeated, but must be protected. But as the object of the law was to insure a speedy collection of the assets of the bankrupt, and a conversion of them into money to be equally distributed amongst all the creditors, the means must be commensurate to the end. The end could not be attained without giving to the federal courts jurisdiction over liens and incumbrances, as by them property which in justice should be converted into assets, may be locked up to the prejudice of general creditors. Without power to inquire into the validity and extent of such incum-brances, the extent of the assets could not be ascertained. Hence it follows that the assignee may apply to the district court to set aside an incumbrance as invalid, for if it be so, the incumbered property becomes immediately assets. He may seek by proper means to have the amount of the lien ascertained, and to that extent enforced, as the residue becomes assets. On the same principle he may redeem pledged property, and he may call in conflicting claimants to litigate their rights with a view *709 to the general benefit of creditors. So too mortgage creditors may go into that court to have the pledged property sold and applied to the payment of their debts pro tanto, and claim out of the general fund for the residue; and to the same end conflicting claimants may have their claims settled there, and obtain the same relief that can be had in the state courts.
But it does not follow that this jurisdiction attaches in every controversy to which a bankrupt is party. The act of congress does not necessarily withdraw from the state courts their jurisdiction over the subjects of liens. The interests of general creditors, who claim under the act, must be involved, or the federal courts will not interfere. There must be a necessity for the exercise of such jurisdiction, to protect the rights of creditors who have presented their claims against the estate of the bankrupt. If there is no such necessity — if creditors are in no way concerned in the controversy, the state courts may proceed to enforce the liens according to state laws. In such cases, the exercise of the federal jurisdiction would not lead to a result useful or beneficial to the creditors ; it could bring no assets into the general fund. But when there is a necessity for the interposition of the bankrupt court, it may, through the instrumentality of an injunction on the person, suspend the action of the state courts, and withdraw the subject of controversy for adjudication and settlement, with a view to the interests of creditors; and it is believed that such adjudication would be final. So, if parties voluntarily resort to that court to have their liens adjusted and enforced, then, as the court has jurisdiction of the subject-matter and of the person, its judgments and decrees must be conclusive. The practical operation of the system may seem to some extent to produce collision between the state and federal jurisdictions. This, as far as it goes, cannot be avoided. Both courts have jurisdiction over the subject of liens, but both have not jurisdiction over the subject of bankruptcy, and from necessity the more limited must, to some extent, yield to the more comprehensive jurisdiction, when both are bound by the same laws. Congress had power to enact the bankrupt law, which implied a power to make it efficient; the *710 end implies the means. The great principle in bankruptcy is, that creditors are entitled to have a distribution of whatever the bankrupt has, either of money, or rights convertible to money. The bankrupt court has the power to declare the distribution, but it would be exceedingly defective without the power to settle the ownership of property, for a claim is not always a right. An incumbrance may cover property worth ten times its amount. The bankrupt court cannot distribute all that creditors are entitled to receive, unless it can also ascertain what constitutes assets, and to this end it may compel the holder to enforce his lien, as it is bound in justice to distribute the residue. In doing this it acts upon a familiar principle of equity, by which mortgagees or others holding incumbrances, may be compelled to foreclose or enforce them, so that other creditors, having general liens, may be entitled to proceed against the residue. The whole sum of this jurisdiction seems to centre in this point ■— a mere power to ascertain what property the bankrupt has, preliminary to its distribution. The jurisdiction of the bankrupt court would be inadequate to carry out the bankrupt act without this power. On this view of the subject, there was no ground whatever for quashing the execution. It does not seem to have been levied on property surrendered by the bankrupt, nor were any steps taken by his assignee to have the matter withdrawn from the state court, by asserting a right to interfere with the lien on behalf of creditors. There was not even a showing that this was a schedule debt, or that the plaintiff had any .notice of the proceedings in bankruptcy. A decree without notice could not bind him. See Miller v. Anderson, in MS., and Talbot v. Milton, in MS.
Judgment reversed.